UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

UNITED STATES OF AMERICA, THE
STATES OF CALIFORNIA, COLORADO,
CONNECTICUT, DELAWARE,
DISTRICT OF COLUMBIA, FLORIDA,
GEORGIA, HAWAII, ILLINOIS,
INDIANA, IOWA, LOUISIANA,
MARYLAND, MASSACHUSETTS,
MICHIGAN, MINNESOTA, MONTANA,
NEVADA, NEW HAMPSHIRE, NEW
JERSEY, NEW MEXICO, NEW YORK,
NORTH CAROLINA, OKLAHOMA,
RHODE ISLAND, TENNESSEE, TEXAS,
VERMONT, VIRGINIA, WASHINGTON,
WISCONSIN, THE CITY OF CHICAGO,
AND THE CITY OF NEW YORK *ex rel.*
OMNI HEALTHCARE INC.,

OPINION & ORDER

19-cv-5125 (NG) (LB)

              Plaintiffs,

    -against-

U.S. ONCOLOGY, INC.,
              Defendant.

------------------------------------------------------------ x
GERSHON, United States District Judge:

I.     Background

Relator Omni Healthcare Inc. ("Omni") filed a *qui tam* action on behalf of the United States, 30 states, the District of Columbia, and the cities of New York and Chicago against U.S. Oncology, Inc. ("U.S. Oncology"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, analogous state statutes, and the common law. U.S. Oncology moved to dismiss the original complaint in its entirety, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, principally arguing that the FCA's "public disclosure bar" barred the action.

I agreed and dismissed the original complaint. I rejected Omni's argument that the public disclosure bar does not apply to an action filed against a defendant that was previously dismissed from a relator's own prior action by reason of the first-to-file bar. Turning to the "original source" exception, I found that Omni had not established that it met the pre- or post-amendment public disclosure bar's definition for an "original source of the information." Familiarity with my prior decision, including the relevant procedural history, facts as alleged in the original complaint, and my rulings regarding the public disclosure bar, is presumed. *See U.S. ex rel. Omni Healthcare Inc. v. U.S. Oncology, Inc.* ("*U.S. Oncology I*"), 2022 WL 17685383 (E.D.N.Y. July 21, 2022).

Following the dismissal of the original complaint, I granted Omni's unopposed motion for leave to file an amended complaint, and Omni filed its First Amended Complaint (the "Complaint"). The Complaint's allegations are largely the same as those alleged in the original complaint, but Omni adds factual allegations to support an argument that it satisfies the public disclosure bar's original source exception. U.S. Oncology now moves again to dismiss the Complaint, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Omni's amended allegations do not establish that it meets the original source exception.

For the reasons set forth below, U.S. Oncology's motion to dismiss the Complaint is granted.

## II.   The Complaint's Amended Allegations

The following facts are drawn from the Complaint and are assumed to be true for purposes of this motion. Below, I primarily discuss the newly alleged facts that Omni has added to the Complaint, as compared to the original complaint that it filed in this action.

Relator's principal and owner is Dr. Craig Deligdish. Dr. Deligdish served as CEO of Oncology Resource Networks, which had a strategic partnership with McKesson Corporation, the current owner of Defendant. Dr. Deligdish also served on the Executive Board of the Florida Society of Clinical Oncology and on the editorial board of Value Based Cancer Care. In these roles, Dr. Deligdish served with multiple medical directors of oncology practices within the U.S. Oncology Network as well as other employees of U.S. Oncology. Put differently, Dr. Deligdish "regularly interfaced with and supervised employees of and medical directors of member-practices of Defendant." Complaint ¶ 116. These individuals included oncologists Dr. Barry Berman, Dr. Linda Bosserman, and Dr. Michael Kolodziej. Dr. Berman currently practices with Florida Cancer Specialists, but previously practiced oncology with U.S. Oncology Network practice Cancer Centers of Florida. Dr. Bosseman was, for ten years, the president and managing partner of Wilshire Oncology, a member of the U.S. Oncology Network. Dr. Kolodziej practiced oncology at U.S. Oncology Network practice New York Oncology/Hematology and served as National Medical Director of the U.S. Oncology Network.

In a conversation with Dr. Kolodziej, at a meeting in Florida, Dr. Deligdish learned that U.S. Oncology kept a record of the average overfill in each different oncology medication vial because different medications contained different amounts of overfill, and documents with these overfill amounts were distributed regularly to members of the US Oncology Network between 2003 and 2014 to encourage and facilitate physicians to administer overfill to patients. Through subsequent unidentified "investigation" and "conversations" with Dr. Berman, Dr. Bosserman, Dr. Kolodziej, and "others," Dr. Deligdish learned that U.S. Oncology advocated that its physicians utilize "overfill billing" for the Oncology Drugs administered to patients. *Id.* ¶ 119. "As part of his investigation," Dr. Deligdish learned that physicians throughout the U.S.

Oncology Network harvested overfill and billed government payors for it. *Id.* ¶ 121. Dr. Kolodziej also informed Dr. Deligdish that U.S. Oncology was aware that it was illegal to bill Medicare for overfill.

Nancy Payne provided additional information to Dr. Deligdish. Dr. Deligdish learned from her that the harvesting of the overfill was done either by the pharmacists or the technicians at each office in the U.S. Oncology Network who were either employed by U.S. Oncology or acted under its direction and that the overfill was billed to government and private payers by staff employed by U.S. Oncology. Nancy Payne is the Executive Director of Cancer Centers of Florida, which was a member of the U.S. Oncology Network from 2001-2010.

The Complaint also alleges the following:

> On or about September 13, 2012, as required by 31 U.S.C. § 3730(b)(2), Relator voluntarily submitted prior to the filing of the initial complaint in this action a confidential written disclosure statement (subject to the attorney-client privilege) to the United States Government, containing materials, evidence, and information in its possession pertaining to the allegations contained in this Complaint. Relator also voluntarily submitted a confidential written disclosure statement and this Complaint to the District of Columbia, as well as the states and cities under whose FCAs this action is partially brought. The disclosure contained the information on which the allegations in this Complaint are based.

*Id.* ¶ 23.

### III. Discussion

#### A. The FCA's Public Disclosure Bar

As I noted in *U.S. Oncology I*, the public disclosure bar was enacted in 1986 and amended in 2010. In its original, pre-amendment form, the public disclosure bar was "jurisdictional;" if the bar applied, it divested the court of its subject matter jurisdiction over an action. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467 (2007). Post-amendment, the current version of the bar is no longer jurisdictional. Instead, it serves as a ground for dismissal,

such "as an affirmative defense or in connection with [a] motion to dismiss." *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 80 (2d Cir. 2017). Because Omni alleges that U.S. Oncology's conduct occurred "from 2003 through at least October 2014," both versions of the bar are relevant. Complaint ¶ 122; *U.S. Oncology I*, 2022 WL 17685383, at *6 (explaining that the pre-amendment bar applies to conduct that occurred prior to the amendment and the post-amendment bar applies to conduct that occurred after the effective date of the amendment).

Under either version, the public disclosure bar requires a two-step inquiry. "First, courts look to whether the substance of a relator's claim had been disclosed prior to the filing of his suit; second, courts look to whether, if such disclosures had been made, the relator can be considered an 'original source.'" *See U.S. ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 2022 WL 17818587, at *2 (2d Cir. Dec. 20, 2022) (internal quotation marks omitted). The only dispute, for purposes of this motion, concerns step two, namely, whether Omni's amended allegations establish that it meets the pre- and post-amendment's original source exception.

### i. Original Source of the Information

#### 1. Pre-amendment "Original Source"

The pre-amendment public disclosure bar defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B) (2006). U.S. Oncology argues that Omni has not established that it has direct and independent knowledge.

The pre-amendment original source exception "impose[s] a conjunctive requirement" on *qui tam* plaintiffs, which requires them to show that their "knowledge of the information on

which the allegations are based" is both "direct *and* independent." *U.S. Oncology I*, 2022 WL 17685383, at *9.

As I noted in *U.S. Oncology I*, knowledge is not direct "if a third party is the source of the core information upon which the *qui tam* complaint is based." *United States v. N.Y. Med. Coll.*, 252 F.3d 118, 121 (2d Cir. 2001) (internal quotation marks omitted). Courts regularly find that knowledge gained through conversations with third parties is not direct. *U.S. Oncology I*, 2022 WL 17685383, at *9. Indeed, the Second Circuit relied on this principle in two recent decisions, affirming dismissals of complaints on the ground of the public disclosure bar. In *Piacentile v. U.S. Oncology, Inc.*, 2023 WL 2661579 (2d Cir. Mar. 28, 2023), the Second Circuit held that the relator's knowledge was "indirect" when the information that he used to craft his FCA complaint was obtained from "third parties," namely, through an "investigation" that consisted of interviews with defendants' executives. *Id.* at *3. Similarly, in *United States ex rel. CKD Project, LLC v. Fresenius Medical Care Holdings, Inc.*, 2022 WL 17818587 (2d Cir. Dec. 20, 2022), the relator, CKD Project, LLC, which was an entity formed for the litigation, acquired its information from a third party, who was an "inside participant" to the fraud. *Id.* at *3. The Second Circuit explained that, while the "inside participant might possess direct knowledge," CKD Project did not. *Id.*; *accord U.S. ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 478 (D.C. Cir. 2016) (examining cases and concluding that "in order to have 'direct' knowledge for purposes of the original source exception, a relator must have some first-hand knowledge that would lead him to believe that a fraud had been committed").

As in *Piacentile* and *CKD Project*, Omni's amended allegations do not plead that it has direct knowledge of the information on which the allegations are based. The Complaint alleges

that Omni's principal, Dr. Deligdish, learned of the fraud through conversations with third parties, namely, Dr. Berman, Dr. Bosserman, Dr. Kolodziej, and Nancy Payne.

Omni's allegation that Dr. Deligdish also learned of the fraud through his own "investigation," likewise, does not plead that his knowledge is direct. Complaint ¶ 119. Omni does not allege any details about the investigation and whether it consisted of anything more than speaking with the aforementioned third parties. An allegation that the relator undertook an "investigation" is insufficient. *Piacentile*, 2023 WL 2661579, at *3.

Omni relies on *United States ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134 (1st Cir. 2020), and *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039 (10th Cir. 2004). In *Banigan*, the relator "was a corporate insider . . . who learned of the fraudulent scheme in which his own company and department participated while he was employed there" and "gained knowledge of the fraud from emails and conversations with . . . the architects and primary perpetrators of the fraudulent scheme." *Banigan*, 950 F.3d at 146. In *Kennard*, the dramatic drop in royalty payments, which the relator had been paid for more than twenty-five years, for gas wells located on his own property, prompted the investigation that revealed the fraud. In contrast to these cases, and as in *Piacentile* and *CKD Project*, Omni alleges that it obtained its knowledge entirely secondhand through conversations with, or documents provided to it by, third parties.

Accordingly, Omni has not shown that it meets the pre-amendment public disclosure bar's original source exception.

### 2. Post-amendment "Original Source"

Post-amendment, an individual has two avenues to meet the definition of an "original source." Under the first avenue, an individual who "prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a

claim are based" is an original source. 31 U.S.C. § 3730(e)(4)(B)(i). Under the second avenue, an individual qualifies as an original source if the individual possesses "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and has "voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B)(2).

### a. Voluntary Disclosure to the Government Prior to a Public Disclosure

As to the first avenue, Omni relies on the following allegation:

> On or about September 13, 2012, as required by 31 U.S.C. § 3730(b)(2), Relator voluntarily submitted prior to the filing of the initial complaint in this action a confidential written disclosure statement (subject to the attorney-client privilege) to the United States Government, containing materials, evidence, and information in its possession pertaining to the allegations contained in this Complaint.

Complaint ¶ 23. The referenced 31 U.S.C. § 3730(b)(2) provides:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4[i] of the Federal Rules of Civil Procedure.

U.S. Oncology contends that, because Omni alleges that its disclosure to the government was "required by 31 U.S.C. § 3730(b)(2)," its disclosure was not made voluntarily. U.S. Oncology is correct. While Omni alleges that its disclosure was made "voluntarily," that is a legal conclusion, which is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). The further allegation that the disclosure was made "as required by 31 U.S.C. § 3730(b)(2)" dooms Omni's argument that it made a voluntary disclosure. Complaint ¶ 23.

As the court explained in *United States ex rel. Beauchamp v. Academi Training Center, Inc.*, 933 F. Supp. 2d 825, 846 (E.D. Va. 2013), such a mandatory disclosure is not a voluntary disclosure. *Beauchamp* relied on the Tenth and Seventh Circuits' decisions in *United States ex rel. King v. Hillcrest Health Center, Inc.*, 264 F.3d 1271 (10th Cir. 2001), and *United States v.*

*Bank of Farmington*, 166 F.3d 853 (7th Cir. 1999), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009). These cases construed the pre-amendment original source definition, which also contained a requirement that the relator "voluntarily" provide information to the government to qualify as an original source. 31 U.S.C. § 3730(e)(4)(B) (2006). They explained that a disclosure that is made pursuant to § 3730(b)(2) is not voluntary. *King*, 264 F.3d at 1280 ("It is also clear from the statutes that compliance with the disclosure requirements of § 3730(b)(2) at the time of filing does not satisfy the pre-filing disclosure requirement of § 3730(e)(4)."); *Farmington*, 166 F.3d at 866 (same).[1] Like the court in *Beauchamp*, I see no reason to depart from this reasoning in construing the identical word in the post-amendment definition.

Omni's arguments to the contrary are unpersuasive. It contends that "[i]t is clear from the post-2010 statute that the only requirement is that the disclosure to the government come before the public disclosure." Relator's Opp'n 6. But this argument reads the voluntary requirement out of the statute. The disclosure must come not only "prior to a public disclosure," but it also must be made "voluntarily." 31 U.S.C. § 3730(e)(4)(B)(i). Omni also argues that I should not rely on authority construing the pre-amendment original source definition because the pre-amendment statute "spoke of disclosure to the government before *filing*," whereas post-

---

[1] Omni argues that *King* and *Farmington* mean only that the timing of the disclosure matters. Specifically, Omni contends that, if made adequately in advance of filing, rather than post-filing, disclosures qualify as voluntary under *King* and *Farmington*, even if they were made to comply with the § 3730(b)(2) disclosure obligation. However, I read *King* and *Farmington* as standing for a broader proposition that any disclosure that is made to comply with § 3730(b)(2) is not a voluntary disclosure. *Farmington*, for example, contrasted § 3730(b)(2) disclosures with examples of how a relator might satisfy the statutory requirement, such as "by notifying the United States Attorney, the FBI, or other suitable law enforcement office of the information which is the basis for the action, or by informing the agency or official responsible for the particular claim." 166 F.3d at 866. Thus, in my view, these cases treated § 3730(b)(2) disclosures as distinct from voluntary disclosures.

amendment, the statute "requires disclosure to the government before *public disclosure*." Relator's Opp'n 7. But Omni offers no explanation as to why this distinction should matter when construing the identical word — voluntarily — in the post-amendment statute.

This conclusion is supported by cases addressing the voluntariness requirement in contexts other than § 3730(b)(2) disclosures. In *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740 (9th Cir. 1995), the Ninth Circuit held that a salaried government employee who was compelled to disclose the fraud as part of his job responsibilities "was no volunteer." *Id*. at 743. He "acted in exchange for valuable consideration — his salary — and under an employment-related obligation to do the very acts he claims were voluntary." *Id*. at 744. Similarly, in *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326 (3d Cir. 2005), the Third Circuit determined that disclosures made in response to a subpoena were not voluntary. They were "precipitated by a subpoena and sustained by [the relator's] self-interest," namely, to obtain a favorable outcome in the government's investigation. *Id.* at 341. Like *Fine* and *Paranich*, Omni was no mere volunteer. Omni's disclosures were made pursuant to a legal obligation and in return for valuable consideration in the form of a possible *qui tam* award. By contrast, for example, courts have found disclosures to be voluntary where apparently unconnected to a *qui tam* lawsuit the relator wrote a letter to the Department of Justice requesting an investigation, *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267 (7th Cir. 2016), or met with Department of Defense officials, *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027 (9th Cir. 1998).[2]

---

[2] *United States ex rel. Godecke v. Kinetic Concepts, Inc.*, 2016 WL 11688143 (C.D. Cal. Aug. 30, 2016), relied upon by Omni, provides no persuasive authority in Omni's favor. *Godecke* held that disclosures made in a meeting with the U.S. Attorney's Office, before the relator amended her complaint to add a new claim, were voluntary. The court in *Godecke*, however, apparently was not presented with, and did not address, the issue presented here, namely, whether § 3730(b)(2) disclosures are voluntary disclosures. Additionally, adopting the definition of voluntary that Omni argues *Godecke* used — "[a]cting, or done, of one's own free will

In sum, since the Complaint does not allege facts showing that Omni "voluntarily" disclosed information to the Government before the relevant public disclosures, its allegations do not meet the post-amendment original source exception's first avenue.

Finally, Omni requests that I consider the declaration of J. Marc Vezina, relator's former counsel, which it attaches to its opposition brief. The declaration sets forth facts that are not alleged in the Complaint, relating to Mr. Vezina's discussions with the government prior to the filing of Omni's 2012 complaints. Such a declaration cannot be considered in ruling on a Rule 12(b)(6) motion to dismiss. *Gray Gables Corp. v. Arthur*, 2022 WL 905393, at *2 (2d Cir. Mar. 29, 2022); *Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006). However, in the interest of avoiding further motion practice on this issue, I note that were I to consider it, it would not suffice. Mr. Vezina describes all of these disclosures as part and parcel of Omni's § 3730(b)(2) mandatory disclosure obligation. For the reasons discussed above, the declaration does not show that these disclosures were voluntary. On the contrary, it shows the opposite.[3]

---

without valuable consideration; acting or done without any present legal obligation to do the thing done or any such obligation that can accrue from the existing state of affairs," *id.* at *9 (quoting *Fine*, 72 F.3d at 744) — Omni would not succeed.

[3] Mr. Vezina states the following in his declaration: in late 2011, after Omni retained Mr. Vezina, Mr. Vezina "reached out" to the U.S. Attorney's Office in Boston and his "law firm prepared a prefiling disclosure statement in this matter," which was provided to the government. Vezina Decl. ¶ 6. After a meeting with Mr. Vezina and Dr. Deligdish, the U.S. Attorney's Office in Boston informed Mr. Vezina that the case "would have to be filed" in Brooklyn and to contact the U.S. Attorney's Office in Brooklyn. *Id.* ¶ 10. Subsequently, Mr. Vezina and Dr. Deligdish met with government attorneys, including from the U.S. Attorney's Office in Brooklyn, and, at the meeting, "Relator conveyed his intention to file the case in that District." *Id.* ¶ 12. Mr. Vezina's office then set up a "Sharepoint site" with the government and "all documents relating to the matter were uploaded, including the disclosure statement." *Id.* ¶ 13. The original complaint in the case was filed shortly thereafter. Following that filing, in July 2012, Mr. Vezina "began preparing a new disclosure statement as to McKesson, OTN, and U.S. Oncology" and "notified the government" "of the intent to amend the complaint in EDNY to add against McKesson, OTN, and U.S. Oncology, as well as the reasons for the amendment." *Id.* ¶¶ 16–17. In August 2012, Mr. Vezina's law firm "finished the new disclosure statement and provided it to

### b. Material Addition to the Public Disclosures

With respect to the second avenue for meeting the post-amendment original source exception, U.S. Oncology argues that Omni does not materially add to the prior public disclosures. To begin with, much of Omni's opposition brief, with respect to 31 U.S.C. § 3730(e)(4)(B)(2), merely repeats arguments that it made in its opposition to the motion to dismiss its original complaint and expresses its disagreement with the *U.S. Oncology I* decision. Since all of Omni's now repeated arguments were fully considered in that decision and rejected, I do not address them again. I consider here only the newly added allegations.

In order "for new allegations to 'materially add' to public disclosures, they must 'substantially' or 'considerably' add to information that is already public." *Vierczhalek v. MedImmune Inc.*, 803 F. App'x 522, 526 (2d Cir. 2020). Prior public disclosures had disclosed that U.S. Oncology harvested overfill and billed the Government for it, and that it knew this practice to be illegal. Omni contends that the Complaint materially adds to such disclosures because it now names specific individuals who can attest to the fact that U.S. Oncology harvested overfill and billed the Government for it, and it names one physician, Dr. Kolodziej, who can attest to the fact that U.S. Oncology knew this practice to be illegal.

Generally, "the 'materially adds' requirement . . . focuses on the *substance* of the allegations, not the *source*." *U.S. ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 760 (10th Cir. 2019). For example, in *Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282 (S.D.N.Y. 2013), the court rejected the relator's argument that alleging that his "colleagues professed to him that they too were aware of, or complicit in, a fraud" materially

---

the government." *Id.* ¶ 18. Mr. Vezina's subsequent discussions with the government in September and October 2012 concerned the "substance of the new disclosure statement" and the "imminent filing of the amended complaint." *Id.* ¶¶ 21, 23. The amended complaint was then filed.

added "to the already robust universe of publicly-available information regarding [the] schemes." *Id.* at 300. The relator identified some of his colleagues by name and others by the name of their current employer. *Id.* at 288–89. As in *EMSL*, Omni's identification of individuals with knowledge of an already publicly disclosed fraud does not materially add to prior public disclosures.

Omni argues that, by identifying Dr. Kolodziej, it alleged evidence of scienter, and "[c]ourts have found that evidence of scienter 'materially adds'" to the public disclosures. Relator's Opp'n 12. However, except for the identification of Dr. Kolodziej, the prior public disclosures already alleged that U.S. Oncology knew that it was unlawful to bill Medicare for the overfill, so this allegation cannot materially add to them. By contrast, in the case relied on by Omni, *United States ex rel. Mitchell v. CIT Bank, N.A.*, 2022 WL 135438 (E.D. Tex. Jan. 13, 2022), which found that the relator's "specific detail[ed]" scienter allegations were a material addition, the prior public disclosures had contained "no hint" that Defendants' "actions were taken *knowingly*." *Id.* at *8.

In sum, the Complaint does not meet the post-amendment original source exception's second avenue.

Omni's FCA claims are dismissed.

### B.  State and Local Law Claims

Having dismissed Omni's FCA claims, I decline to exercise supplemental jurisdiction over its state, local, and common law claims. *See* 28 U.S.C. § 1367(c)(3); 31 U.S.C. § 3732(b).

## IV.     Conclusion

For the reasons set forth above, U.S. Oncology's motion to dismiss the Complaint is granted.

SO ORDERED.

_____/S/_____
**NINA GERSHON**
**United States District Judge**

September 8, 2023
Brooklyn, New York